The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

BERNARD ROSS HANSEN and
DIANE RENEE ERDMANN,

Defendants.

NO. CR 18-92RAJ

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DINO VASQUEZ OR, IN THE ALTERNATIVE, FIND ATTORNEY-CLIENT PRIVILEGE WAIVED AS TO ALL DEFENDANT COMMUNICATIONS WITH KARR TUTTLE CAMPBELL**

**Oral Argument Requested**

Noting Date: May 7, 2021

## I.    INTRODUCTION

The government requests that the Court exclude the testimony of Dino Vasquez, one of two attorneys at the Karr Tuttle Campbell law firm who met with defendant Ross Hansen after Northwest Territorial Mint's (NWTM) general counsel alleged fraud at the company. Defendants have waived any possible claim to personal attorney-client privilege as to Vasquez, who performed compliance work of limited scope for NWTM, and listed him as a defense witness at trial, while maintaining the privilege as to the other attorney, Ron Friedman, who led the representation and advised defendants on the criminal investigation. Offering the testimony of Vasquez alone, while shielding Friedman, would give a misleading and unfair version of defendants' response to the

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 1

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

allegations of criminal conduct, and present a false narrative of their purported good-faith reliance on outside counsel. Vasquez's work was the less relevant and consequential of the two prongs, and on its own will serve to confuse and delude the jury. Moreover, this selective presentation would work an end run around the requirements of an "advice of counsel" defense, which both defendants have disclaimed, enjoying its benefits without meeting its requirements. Vasquez's testimony, and evidence of his work and communications, should be excluded. If evidence related to Vasquez's work is permitted, the Court should find that defendants waived privilege as to all their communications with Karr Tuttle Campbell to allow the jury to fairly evaluate the full picture of defendants' response to the internal fraud allegations.

## II.    RELEVANT BACKGROUND

In 2008, after an investigation by the Washington Attorney General's Office into customer complaints about NWTM's failure to deliver their purchased bullion as promised, NWTM entered into a Consent Decree with the State of Washington. The Consent Decree set forth certain requirements that NWTM accurately inform its customers of shipping dates and refund rules, and then comply with those dates and rules. Due to its continued failure to ship bullion to customers as represented, the Attorney General's Office conducted another investigation in 2014, which was eventually referred to the FBI and which resulted in the charges here.

At trial, the government will offer testimony of former NWTM employees on NWTM's business practices, including the use of new customers' money to fill old and overdue orders and the use of customer bullion stored with NWTM to fill other customers' orders. These witnesses will include former in-house attorneys for NWTM.

### A. Fullington Memo and Response

In September 2015, NWTM General Counsel Greg Fullington wrote a memo (Fullington Memo) to Hansen expressing his belief "that NWTM and Ross Hansen are more likely than not engaging in business practices that amount to fraud, misappropriation of customer funds, and Ponzi scheme" and the reasons for that

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 2

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conclusion. Exhibit A. The apparent genesis of the memo was Hansen's request that Fullington review the criminal charges filed against another bullion dealer, Hannes Tulving, and his company. *Id.* Fullington writes that he was "alarmed and concerned to find that Tulving's activities for which charges were brought (criminally and civilly) were similar to activities I believe are currently being undertaken by NWTM." *Id.*

Setting forth those apprehensions, the Fullington Memo includes a table comparing the charges against Tulving with similar conduct at NWTM. The first of these items relates to Fullington's apparent concern that NWTM's website statements about its shipping policies, while compliant on their face with the Consent Decree, may be misleading. The next four items do not reference the Consent Decree:

- "Numerous orders are not fulfilled within the given shipping window and extension as advertised and agreed."

- "NWTM has used some of the bullion customers pay NWTM to store to fulfill bullion orders. Not all of that bullion has been physically returned to storage."

- "NWTM is using customer payments to fulfill other customers' orders, pay debts of NWTM, and return money to previous customers who did not received their orders. These actions are keeping NWTM in business."

- "NWTM is not informing customers that the funds they submit for payment of bullion orders are not used to purchase the bullion they ordered."

Ex. A at 3-5. According to the Memo, Fullington also stressed to Hansen "the need to undertake an audit of NWTM's business practices and NWTM's bullion holdings, specifically the stored precious metals." Hansen did not authorize such an inventory. *Id*

Concerned about criminal liability, Hansen sought outside counsel. In late October 2015, Hansen was referred by a prior criminal attorney, Jon Zulauf, to Ron Friedman, a former federal prosecutor and partner at Karr Tuttle specializing in white-collar criminal defense, among other things. Friedman then involved a second partner at his firm, Dino Vasquez, to assist with that portion of the Fullington Memo that raised concerns about a violation of the Consent Decree.

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 3

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Over the course of a handful of days, Vasquez performed a limited audit of

2    NWTM's compliance with the Consent Decree. He met with various sales and customer

3    service employees, observed their interactions with customers over the course of four

4    different days, and wrote up his findings in letter completed approximately March 21,

5    2016 and provided to Hansen and other NWTM employees (the "Audit Memo").

6    Vasquez's work, and the Audit Memo, were focused on NWTM's facial compliance with

7    some aspects the Consent Decree; that is, whether the customer service representatives

8    were using the appropriate script and notifying customers of their right to buy back

9    purchases or request a refund when orders went unfulfilled. Vasquez did not attempt to

10   address the other parts of the Fullington Memo, including potential criminal conduct.

11   Following the compliance audit, Hansen remained in touch with Friedman,

12   exchanging several emails (some of which included Vasquez) over a span of the three

13   weeks that straddled NWTM's filing for bankruptcy on April 1, 2016. As summarized by

14   Hansen's prior counsel in this matter, those emails related to the Tulving prosecution and

15   the criminal investigation of Hansen and NWTM (in other words, the core of the

16   Fullington Memo). Dkt. 63, at 7. These emails were the subject of a privilege motion

17   before this Court, discussed below.

18   **B. Defense's Privilege Motion and Hearing**

19   In January 2019, Hansen's prior counsel moved to assert attorney-client privilege

20   over seven emails that included the post-audit communications described above, and

21   waived privilege as to other Karr Tuttle documents related to the compliance audit. Dkt.

22   63. The Court held a hearing in April 2019 and granted Hansen's motion. Dkt.78.

23   Notably, Hansen argued in his motion that "Even if the defense later decides to utilize the

24   Audit at trial, fairness does not require disclosure of these post-Audit communications

25   nor is the Government disadvantaged by Mr. Hansen's limited assertion of attorney-client

26   privilege at this time." Dkt. 63, at 9. The government disagrees. While waiver may not

27   have been required at that time, the government believes that in light of the facts learned

28   since, defendants' disclosures, and the upcoming trial, this issue must now be resolved.

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 4

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

C.  **Government Interview of Dino Vasquez**

After that hearing, in June 2019, the government interviewed Vasquez at Karr Tuttle's Seattle office; counsel for Hansen and Erdmann were present, as was Friedman. In that interview, Vasquez made clear he did not have experience working in criminal matters. Report on Interview of Dino Vasquez (Exhibit B) at 1. As described by Vasquez, at their initial meeting, Friedman provided information about Fullington's complaint, and Vasquez said they may have gone through the Fullington Memo together at that time. *Id.* at 2. They decided Friedman would handle issues from the Fullington Memo that dealt with potential criminal matters, and Vasquez would handle compliance issues related to the Consent Decree, namely, the communication NWTM had with its customers. *Id.* The next day, Vasquez and Friedman met with Hansen, and Vasquez recalled they may have gone through the Fullington Memo together during that meeting. *Id.* at 3. They again discussed, this time with Hansen, that Friedman would handle possible criminal matters, while Vasquez would handle compliance with the Consent Decree. *Id.*

Vasquez next described how, in the course of his audit, he observed the salespeople and customer service representatives to determine if they were handling sales calls and customer inquiries in accordance with the Consent Decree. *Id* at 5-9. Vasquez made clear he never intended to review any alleged misuse of customer funds by NWTM, and did not do so. *Id.* at 3. He did not review financial records, purchasing records, shipping records, nor did he conduct any physical inventory of any of NWTM's vaults. He did not attempt to determine whether delays in shipping bullion really were related to "increased demand" as claimed by NWTM, nor whether NWTM's bullion shipping representations to customers were based on any prior period average. *Id* at 11-13. His on-site work was essentially limited to observing customer service and sales employees for a few hours over four separate days. In his March 2016 Audit Memo, he nevertheless concluded that NWTM's "practices and procedures are substantially compliant with the Consent Decree."

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 5

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. Defense's Disclosures on Advice of Counsel

In June 2019, prior counsel made defendants' Rule 16 disclosures. Defendants did not assert an advice of counsel defense, but stated Hansen had employed in-house and outside counsel, and "[t]hese facts bear upon Mr. Hansen's and Ms. Erdmann's alleged criminal intent and the attorney witnesses include, but may not be limited to, former General Counsel for the Mint, Greg Fullington, as well as Karr Tuttle attorneys Ron Friedman and Dino Vasquez." Ex. C. On August 9, 2019, Hansen filed his preliminary witness list, which included Vasquez, but not Friedman or Fullington. Dkt. 103.

On August 31, 2020, current defense counsel made defendants' disclosures anew. Again, neither defendant stated an intent to rely upon an advice of counsel defense or seek a jury instruction on that defense. However, Hansen reserved the right to use evidence of the advice of lawyers to argue that the government failed to prove his fraudulent intent. Ex. D. Erdmann simply stated that she "reserves the right to assert the defense of reliance on professional advice." Ex. E. Pressed by the government for clarification, counsel confirmed Erdmann would not be asserting an advice of counsel defense. Current defense counsel disclosed a preliminary witness list on December 23, 2020. Once again, Vasquez was listed, but Friedman was not. Given the presence of at least one lawyer on the defendants' witness list, simultaneously disclaiming an advice of counsel defense and foreshadowing evidence of "advice of lawyers" and "reliance on professional advice" muddies these disclosures and requires clarification before trial.

### III.   ARGUMENT

Allowing Vasquez's testimony would confuse and mislead the jury for two related reasons. First, it implicitly presents the advice of counsel defense that both defendants have explicitly disavowed, leaving the jury to guess, without instruction from the Court, at the permissible bounds of such a showing. Second, this quasi-defense is particularly problematic where it claims or suggests reliance on advice of (non-criminal) lawyers is relevant to the charges and to defendant's state of mind, while omitting reference to

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 6

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

advice received from criminal defense attorneys with whom defendants consulted, in particular the one who managed the representation of which Vasquez was a part.

If evidence of Vasquez's work and advice are permitted, privilege as to defendants' communications should be waived as to Friedman as well. Fairness requires that implied waiver, and the jury would plainly be misled and confused without it. Because the Vasquez communications were part of a coordinated response (and the less relevant part for purposes of these proceedings), subject matter waiver compels disclosure of communications with Friedman as well.

Should Vasquez testify and privilege as to defendant's communications with Friedman remain intact, the government intends to cross-examine Vasquez on the division of responsibility in the representation, and specifically about the fact that potential criminal matters raised by Fullington were left to Friedman.

**A. Having Disclaimed an Advice of Counsel Defense, Defendants Should Not be Permitted an End Run Around the Requirements of that Defense by Offering Selected Evidence of Legal Advice to Negate Intent to Defraud.**

Both Defendants have advised the government that they do not intend to seek an advice-of-counsel defense, or jury instruction.[1] Presumably, defendants have determined they cannot make the requisite showing. But defendants' fallback position—that advice from lawyers will be relevant to show non-criminal intent—is flawed. For a defendant to say that his state of mind was affected by advice he received from lawyers is to present an advice of counsel defense in good-faith clothing. *See, e.g., United States v. Joshua*, 648 F.3d 547, 554 (7th Cir. 2011):

> [Defendants] say that they were using the testimony of Attorney Work about the legal advice he gave to them in an effort to show that they acted in good faith and thus not with the intent to defraud. But this is exactly what the advice-of-counsel defense does. It is not a stand-alone defense;

---

[1] A jury may be instructed that "[u]nlawful intent has not been proved if the defendant, before acting, made full disclosure of all material facts to an attorney, received the attorney's advice as to the specific course of conduct that was followed, and reasonably followed the attorney's recommended course of conduct or advice in good faith." Ninth Circuit Model Jury Instruction 5.10 (2010 Edition, updated 12/2020).

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 7

1   rather, information about advice of counsel sheds light on the question
2   whether the defendants had the required intent to defraud.

3   And if the jury is to hear Karr Tuttle's advice to defendants, they should hear all of it.

4   Permitting the testimony of Vasquez while upholding privilege with respect to
5   Friedman presents a false narrative to the jury. The jury will be permitted to conclude
6   events went as follows: (1) Fullington advised Hansen that his business was "more likely
7   than not" operating a as a criminal fraud; (2) prompted by the memo, Hansen sought
8   outside counsel and met with Karr Tuttle; and (3) Vasquez reviewed NWTM's business
9   operations and pronounced them in compliance with the Consent Decree. As the
10  government would show at trial, this was a superficial and incomplete review, even for
11  his limited area of responsibility. But despite his handling *only* what he and Friedman
12  determined to be issues *unrelated* to criminal liability (those remained in Friedman's
13  purview), Vasquez's work will be proffered as a defense to the criminal conduct charged,
14  the same criminal conduct raised by Fullington. Missing altogether from such a narrative
15  would be the fact that Karr Tuttle divided its work between defendants' criminal issues
16  and NWTM's compliance concerns, and though the former are the subject of this case,
17  Vasquez dealt only with the latter.

18  For all the government is aware, Vasquez's audit, irrelevant as it was to most of
19  the issues raised by the Fullington Memo, was undertaken for the very purpose it may
20  now serve: to create the appearance of a good-faith response to fraud allegations while
21  defendants continued to strategize with counsel about a defense to the underlying
22  criminal investigation.[2] The complete picture of defendants' communications with Karr
23  Tuttle may actually undermine, rather than support, a good-faith defense. But the
24  government only has half of the picture, and so will the jury if Vasquez is permitted to

25
26

27  [2] For example, in an October 30, 2015 email to Hansen attaching the fee retainer agreement, Friedman writes: "I am
28  hopeful that we can get the due diligence product underway next week…I will be calmer once it is going on, as
    merely being able to say, it is ongoing, will be helpful to us at this juncture, come what may." Ex. F.

testify while communications with Friedman remain shielded. And because his is the less relevant half of that picture, Vasquez's testimony will confuse and mislead the jury.

**B. If Vasquez is Permitted to Testify, Fairness Requires Waiving Privilege as to All Communications Between Defendants and Karr Tuttle Campbell Attorneys.**

If evidence of Vasquez's audit work is permitted, all privilege related to Karr Tuttle's representation of NWTM and defendants should be deemed waived. If defense advances a theory that communications from Karr Tuttle show a non-fraudulent intent, all such communications should be available for the jury to properly evaluate such a claim. If defendants offer evidence of legal advice from Vasquez, fairness dictates that they open the door to evidence of communications with Friedman as well.

Based on their comments in the meet and confer, defense will claim that this issue has already been disposed of by defendants' January 2019 motion to uphold privilege as to the emails between Friedman and Hansen. That is not the case. The primary issue at that hearing was whether the privilege for the Karr Tuttle communications, in particular those with Friedman, belonged to Hansen individually or to NWTM, and if so, whether that privilege had been waived by disclosure to others. *See, e.g.*, Dkt. 173, at 5. That hearing was also before the government interviewed Vasquez, and before defendants brought the issue to a head by including Vasquez on their witness list. Having determined that defendants hold the privilege as to their communications with Friedman, the question now is what may be used as evidence at trial, and what may be referred to during examination or argument, particularly if defendants choose to affirmatively put at issue the work done by Vasquez at Friedman's behest and direction.

Subject matter waiver is based on fairness: it prevents a defendant from misleading the jury by disclosing and presenting advice that supported his actions, while concealing contrary advice he also received. *Chevron Corp. v. Pennzoil*

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 9

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  *Co.,* 974 F.2d 1156, 1162 (9th Cir.1992)(emphasis added) ("Where a party raises a

2  claim which *in fairness* requires disclosure of the protected communication, the

3  privilege may be implicitly waived."). *See also* Fed. R. Evid. 502(a)(3). When a

4  defendant asserts a defense based on reliance on the advice of counsel, he waives

5  the privilege with respect to all communications regarding the same subject

6  matter. *Rojicek v. River Trails School Dist. 26*, 2003 WL 1903987, at * 3 (N.D. Ill.

7  2003). *See also Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745

8  F.3d 343, 353 (9th Cir. 2014) ("A party who affirmatively places its attorney-

9  client communications at issue in a litigation implicitly waives the privilege.").

10      To the extent defendants would argue that NWTM's engagement of the

11  Vasquez audit shows their good faith, implied reliance on advice of counsel, and

12  specifically advice of Friedman, who apparently suggested the audit in response to

13  allegations of criminal wrongdoing in the first place, should require finding a

14  waiver as all Karr Tuttle communications.

15      Defendants cannot credibly claim that communications with Karr Tuttle about

16  their criminal liability is a separate subject matter from the compliance audit. The fact

17  that defendants view the issues as intertwined is evidenced by the fact that they may

18  attempt to introduce Vasquez's work and Audit Memo as a defense to the criminal

19  charges here. Courts have consistently held that "the attorney-client privilege cannot at

20  once be used as a shield and a sword." *See, e.g., United States v. Bilzerian,* 926 F.2d

21  1285, 1292 (2d Cir. 1991). But allowing the defense to offer the testimony and audit of

22  Vasquez (the sword), while simultaneously withholding the details of Friedman's

23  consultation (the shield), would work precisely that prejudice.

24      Defendants previously argued that communications with Friedman are protected

25  despite their waiver of the audit and communications with Vasquez. Dkt. 63, at 9. The

26  main reason advanced for this proposition is that Friedman's communications came after

27  the audit, and so were separate. *Id*. First, this was not always true. After Vasquez emailed

28  Hansen on December 16, 2015, copying Friedman, outlining the status of his review,

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 10

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Friedman responded to both: "This sounds good from my perspective, given the goals to be accomplished. All it is good [sic] that all remains quiet." Ex. G. Likewise, a Karr Tuttle billing entry for Vasquez reflects 0.8 hours on March 4, 2016—before the date of the audit letter—notes: "Telephone Conference with Ross Hansen and Ron Friedman re issues on investigation by DOJ."[3] That call was followed that same day with an email from Friedman to Hansen, copying Vasquez, saying: "I have encouraged Dino to move forward to complete his due diligence review. In addition, as requested, I have reviewed the Fed Guidelines, and the comment by Mr. Zulauf [the criminal attorney who referred Hansen to Friedman] was correct.  And the matter would be handled as I described on our phone call of today." Ex. H. These communications make clear that the Vasquez review was part of a coordinated response to the allegations raised by Fullington. It would be unfair to present one part of that response while shielding the rest.

## C. If Vasquez's Testimony is Allowed and Privilege Over Communications with Friedman Upheld, the Government Intends to Cross-Examine Vasquez about Friedman's Role in the Representation.

In the event the Court denies the government's motion to exclude testimony from Vasquez, or to find that such testimony waives attorney client privilege with respect to Friedman, the government should be allowed to, and intends to, cross-examine Vazquez concerning his role and that of Friedman and their respective responsibilities.  This is necessary to demonstrate that Vasquez never intended to address any criminal conduct raised by the Fullington Memo and took no steps to investigate the bulk of the issues Fullington raised. Without reference to the part Friedman played, defense could argue that, even though *Vasquez* may have known he was performing a narrow review, *Hansen and Erdmann* believed that Vasquez's work represented a complete response to Fullington's concerns.  For the jury to understand Vasquez's role, the government would need to elicit that defendants were referred to a criminal defense attorney (Friedman) by

---

[3] In his interview with the government, Vasquez denied participating in this call. Ex. B at 13.

1  another criminal defense attorney (Zulauf), and the limited Vasquez work was a piece of

2  a larger criminal defense strategy, and the reason Vasquez never intended to address the

3  criminal conduct alleged by Fullington is because someone else was.

4       A similar issue arose in the trial of former Illinois governor Rod Blagojevich. The

5  Seventh Circuit held it proper for the prosecution to offer evidence that Blagojevich had

6  retained criminal defense attorneys ahead of his arrest where Blagojevich had referenced

7  legal advice from other (non-criminal) attorneys in service of a "good faith" defense:

8  "Having asserted that he consulted with counsel, Blagojevich opened the door to

9  evidence that he had other lawyers too yet was keeping mum about what they told him.

10  That's an appropriate topic for evidence and for comment during closing argument."

11  *United States v. Blagojevich*, 794 F.3d 721, 742 (7th Cir, 2015).

12       Here, the door would be opened wider. Rather than passing references to

13  non-criminal lawyers, defendants have raised the prospect of calling one to testify

14  and, through a selective privilege waiver, offering evidence of his work, advice,

15  and conclusions, while withholding communications with experienced criminal

16  counsel in the same representation. If that happens, the government intends to

17  elicit through cross examination that defendants also had other lawyers about

18  whom they are "keeping mum."

19         **IV.   CONCLUSION**

20       The government respectfully requests that the Court exclude the testimony of Dino

21  Vasquez and any evidence of his work and advice. If that testimony and evidence are

22  permitted, the government requests that privilege be deemed waived as to all

23  communications between Defendants and all Karr Tuttle attorneys, including Friedman.

24

25  //

26

27  //

28

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 12

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.     CERTIFICATION OF COMPLIANCE

The undersigned certifies that, pursuant to Local Criminal Rules 12(b)(7) and 23.2, counsel for the government met with counsel for Mr. Hansen and Ms. Erdmann via video conference on March 31, 2021.  The parties further corresponded via e-mail.

Dated this 19th day of April, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Benjamin T. Diggs*
BENJAMIN T. DIGGS
BRIAN WERNER
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: (206) 553-7970
E-mail: benjamin.diggs@usdoj.gov

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 13

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3
4
5

     I hereby certify that on April 19, 2021, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the defendants.

6

7

                     *s/ Benjamin T. Diggs*

8

                     BENJAMIN T. DIGGS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Motion *in Limine* to Exclude Testimony of Dino Vasquez - 14

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970