# Exhibit A

September 28, 2015

To: Ross Hansen, CEO and President, Northwest Territorial Mint
From: Greg Fullington, General Counsel, Northwest Territorial Mint

**Concern**: It is my opinion that NWTM and Ross Hansen are more likely than not engaging in business practices that amount to fraud, misappropriation of customer funds, and Ponzi scheme[1] pursuant to 18 U.S.C. § 1343 and 17 C.F.R. § 180.1. It is my belief that these business practices expose NWTM and Ross Hansen to criminal and civil liability.

**Advice**: 1) Immediately cease all bullion sales; 2) Immediately contact all customers who currently hold unfulfilled orders of bullion, and make arrangements to either fulfill the orders or refund their money; and 3) Immediately replenish all bullion storage accounts with physical metal.

The forgoing concern and advice is based on the following:

On September 22, 2015, you asked me to look into the criminal charge and basis for the charge to which Hannes Tulving plead guilty. You also asked me to look into what sentence you might receive for the same charge, given your criminal history. I then undertook to examine the criminal charging document (Bill of Information), along with the Factual Basis for the Plea document, both obtain from the PACER system (the federal courts' records system). I also examined the CFTC's complaint against Tulving (Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations). I was alarmed and concerned to find that Tulving's activities for which charges were brought (criminally and civilly) were similar to activities I believe are currently being undertaken by NWTM. I also reviewed the federal Criminal History Primer (April 2013), the 2011 Federal Sentencing Guidelines Manual, the federal Sentencing Table, and your criminal history, noting that if charged, your sentence would likely be similar to what Tulving will be sentenced to (12.5-15.5 years).

On September 23, 2015, I met with you to discuss my concerns, at which time I asked permission to undertake an audit of NWTM's business practices and NWTM's bullion holdings, specifically the stored precious metals. Upon completion of the audit, I explained that I would then have the information necessary to advise on NWTM's and your criminal and civil liability, and give recommendations on any necessary changes in business practices which would assist in remediating liability. You denied my request to perform the audit. Instead you asked me to voice my concerns, which I did, to include questioning you about the state of our stored metals, to which you noted that some metals, unbeknownst to you, had been used to fulfill bullion orders, but those metals were being returned to storage (I have no way to verify this without undertaking an audit). I also spoke to you about our backlog of bullion orders, explaining that

---

[1] Per the USAG, in an unrelated criminal prosecution: The Ponzi aspect of the swindle came when AB&C "used monies supplied by later clients to pay earlier clients" who were seeking to liquidate all or a portion of what they thought was their silver holdings.

money paid by customers was only to be used to purchase their bullion, not to be used for any other purpose, to which you noted that we were currently only in arears 33,000 ounces of silver, and would be caught up and shipping within the shipping window or extension in the near future (again, I have no way to verify this without undertaking an audit). I also discussed that if charged similarly to Tulving, the sentence he would receive and that your sentence would likely be similar, given that I believed that your criminal history was too distant to be used to enhance any sentence you might receive. You then asked that I draft a document setting forth my concerns and the basis for them. This document is in response to your request.

**Source: Tulving Criminal *Information* – Wire Fraud & CFTC Civil *Complaint***

| Tulving | NWTM | Notes |
|---|---|---|
| *Information*[2]: The Tulving Co. web site promised to deliver the coins on a specific timetable depending on the type of merchandise. *Complaint*[3]: The website stated that precious metals were shipped quickly to customers after placement of orders and receipt of customer funds. Specifically, the website represented: "Gold, Platinum, and Palladium are typically shipped within 72 working hours of receipt of your wire;" "[s]ilver is typically shipped within about 5 working days after receipt of your wire;" and items paid by check would be shipped within 14 working days. These representations were | "Please allow 8 to 10 weeks for delivery." http://bullion.nwtmint.com/silver_panam.php "Our policy is to ship orders promptly AFTER you have properly paid us." "Delivery dates vary with supply and demand." "In the event we are unable to ship your order by the date promised, we will contact you and give you the option of buying back your order based on the spot market price at that time or agreeing to wait an additional period of time for your order, which shall not be more than 30 days." "If we are unable to deliver after the additional period of time has elapsed we will pay you the full purchase price or the prevailing spot market price, whichever is higher." http://bullion.nwtmint.com/buyingbullion.php | Prompt: With little or no delay; immediately at exactly a specified time; punctually. Without an audit, I am unable to determine the percentage of orders that are shipped within the shipping window or within the extension period. In any event, given our refund numbers, there is no argument that we have a substantial number of orders not being shipped prior to drop dead. Inability to ship is contemplated, given the reference to a refund if shipping does not occur. This is also consistent with the requirement found in the AG Consent Decree. |

---

[2] The italicized "*Information*" refers to the contents of the Bill of Information and the Factual Basis documents.
[3] The italicized "*Complaint*" refers to the contents of the Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations document.

| | | |
|---|---|---|
| false. | | |
| *Information:* The Tulving Co. and Tulving induced customers to place orders and send money knowing that numerous orders could not be fulfilled as advertised.<br><br>*Information:* Defrauded individuals by inducing customers to place orders for gold and silver coins, among other things, and wire money for those goods knowing that numerous orders could not be fulfilled as advertised and promised.<br><br>*Information:* While customers were promised that their orders would be processed and shipped as advertised and agreed, in reality, the Tulving Co. and Tulving knew they could not fulfill all of the orders as agreed. | Numerous orders are not fulfilled within the given shipping window and extension as advertised and agreed. | Without an audit, I am unable to determine the percentage of orders that are shipped within the shipping window or within the extension period. In any event, given our refund numbers, there is no argument that we have a substantial number of orders not being shipped prior to drop dead.<br><br>The question here is if NWTM is taking orders it knows cannot be fulfilled within the given window, or extension.<br><br>Certainly, NWTM cannot argue it is shipping "promptly," and this should be removed from the web site. |
| *Complaint:* Defendants attempted to conceal their fraud by making false and/or deceptive statements. Defendants falsely represented that: (1) investors owned specific amounts of precious metals when, in fact, they did not; and (2) investors holdings in precious metals had significant value when, in fact, the | NWTM has used some of the bullion customers pay NWTM to store to fulfill bullion orders. Not all of that bullion has been physically returned to storage. | Any statement that is sent to customers stating that they have a certain amount of stored bullion, when in fact they do not, is fraud. Further, this may be theft (criminal) or conversion (civil), since NWTM did not have authority or permission to use the stored bullion. |

| | | |
|---|---|---|
| non-existent holdings had no value whatsoever. | | |
| *Information:* In many instances Tulving and the Tulving Co. used customer payments to fulfill other customers' orders, pay debts of the company, and also return the money to previous customers who did not receive their coins, all in furtherance of keeping the scheme and business going.<br><br>*Complaint:* Defendants . . . did not purchase precious metals on behalf of customers and misappropriated most, if not all, of the customer funds.<br><br>*Complaint:* Defendants misappropriated customer funds for Defendants' own financial benefit and for purposes unrelated to the purchase and sale of precious metals. | NWTM is using customer payments to fulfill other customer's orders, pay debts of NWTM, and return money to previous customers who did not receive their orders. These actions are keeping NWTM in business. | No audit is necessary to realize these activities are taking place at NWTM. Based on the *Information* and *Complaint*, these business practices are a violation of the law, and the monies are not being spent on customer orders as agreed when a customer places his/her order. This, in and of itself appears to be a basis for a criminal and/or civil charge or charges.<br><br>When a customer orders a commodity (bullion) as an investment, the broker (NWTM) may only use the customer's funds to purchase the commodity for the customer, and for no other purpose.<br><br>Paying refunds to customers for past orders using the money derived from customers placing new orders is akin to a Ponzi scheme.<br><br>Further, it is my understanding that this has been NWTM's business model from |

| | | |
|---|---|---|
| | | its earliest days of operation.<br><br><u>Ponzi scheme</u>: A fraudulent investment operation where the operator, an individual or organization, pays returns to its investors from new capital paid to the operators by new investors, rather than from profit earned by the operator. |
| *Complaint*: Defendants also failed to disclose, and omitted, that the Tulving customer funds would be misappropriated by Defendants for purposes unrelated to the purchase and sale of precious metals. | NWTM is not informing customers that the funds they submit for payment of bullion orders are not used to purchase the bullion they ordered. | |
| *Information:* Tulving was the sole owner, shareholder and President of the Tulving Co.<br><br>*Complaint:* Tulving acted as the sole controlling person and agent of the Tulving Company. Tulving solicited investors on behalf of Tulving Company and handled all customer funds received by Tulving Company. Tulving was the sole shareholder and president of Tulving Company, and he acted solely on | Ross Hansen is the owner and sole member of Northwest Territorial Mint LLC. | |

| | | |
|---|---|---|
| behalf of Tulving Company. Tulving was the sole person responsible for making all business decisions on behalf of Tulving Company and controlled all the operations of Tulving Company. | | |

FBI302_007377