Hon. Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DIANE RENEE ERDMANN,<br><br>Defendant. | NO. 2:18-cr-00092-RAJ<br><br>ORDER ON DEFENDANT ERDMANN'S MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33 |

## I.    INTRODUCTION

THIS MATTER comes before the Court upon defendant Diane Erdmann's Motion for a New Trial Pursuant to Fed. R. Crim. P. 33. Dkt. 358. Having considered the motion, the government's response (Dkt. 361), the defendant's reply (Dkt. 366), and the files and pleadings herein, the Court **DENIES** the defendant's motion.

This is the third time the defendant has raised objection to her joinder for trial with co-defendant Bernard Ross Hansen. This Court denied her original request (Dkt. 214), and again following her motion for acquittal under Rule 29 at the close of the government's case-in-chief. In this motion she essentially restates previous arguments and grounds to support her motion for a new trial, with emphasis upon her contention that she was only a bit player in Hansen's scheme and her conviction was premised solely upon the overwhelming evidence presented against him at trial. She is wrong on all claims, once again. Moreover, the Court properly instructed the jury as to the evidence to

ensure that she received a fair trial and to prevent any unfair "spillover" prejudice. Dkt. 214.

## II.    LEGAL STANDARDS

Erdmann seeks a new trial pursuant to Federal Rule of Criminal Procedure 33. Rule 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." She also predicates her motion on the renewed challenge to her joinder with Mr. Hansen. As the Court indicated in its original Order (Dkt. 214) denying her pretrial challenge, she bore the burden to demonstrate that joinder would cause her "clear, manifest or undue" prejudice of such magnitude that, without severance, her right to a fair trial would be denied. *United States v. Vasquez-Velasco,* 15 F.3d 833, 845 (9th Cir. 1994). A court's determination for joinder is given deference absent a showing that "joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." *United States v. Armstrong,* 621 F.2d 951, 954 (9th Cir. 1980).

A motion for a new trial is to be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimental,* 654 F.2d 538, 545 (9th Cir. 1981). Moreover, a trial court may grant a motion for new trial where, in its judgment, "a serious miscarriage of justice may have occurred." *United States v. A. Lanoy Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992).

## III.    DISCUSSION

There was significant evidence presented by the government that showed Hansen and Erdmann collectively ran a criminal enterprise that defrauded scores of individuals. The evidence reflected that Erdmann's role was critical in the operation of the business of the Northwest Territorial Mint (NWTM).

The government pointed out several of the roles and activities of Erdmann that significantly conflict with the "limited role" contention of her motion. Dkt. 358. The government's references restate her direct participation in the fraudulent scheme. Dkt.

361.  To underscore the evidence presented at trial the Court recalls the additional following facts regarding Erdmann's connection to the fraudulent scheme:[1]

- Erdmann informed employees as to the time frame for delivery of customer orders.  As vault manager she controlled what went in and out of the vault and there was no doubt that Erdmann was No. 2 in the operation and made it clear that she gave orders and did not take orders (Testimony of Erin Robinson);

  Erdmann insisted on entering what [inventory] came in.  She inflated it so she could ship at will.  We were unable to tell what metals we had on hand (Testimony of Erin Robinson);

- Employee witnesses identified Erdmann as NWTM's second-in-command and directed other employees' activities with the ability to threaten their jobs.  The tone set in NWTM's workplace was that Erdmann gave orders to others (Testimony of Derrin Tallman);

- Erdmann and Hansen took cash withdrawals from the till box and these were considered owner draws, and that reports from the EPP system involved cash, personal expenses, and credit cards for both company expenses and reimbursements (Testimony of Annette Trunkett);

- Erdmann was right behind Hansen.  She gave orders and within three to four days of employment advised him that she could have him fired by the end of the day (Testimony of Mike Orms);

- When the production needs list was produced, Erdmann directed what needed to be produced as she outranked the production manager.  He also testified it was Erdmann's idea to borrow rounds from storage and replace other products (Testimony of John Rickey);

- Erdmann was in charge of the vault based on the way orders came in and out of the vault (Testimony of Mike Orms) and it was clear she was the only person allowed in the vault (Testimony of Bill Hansen);

[1] These references reflect the Court's recollection of the evidence.

ORDER ON DEFENDANT ERDMANN'S MOTION
FOR NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33 - 3

- Erdmann was in charge of what orders were shipped out and had authority over how and when metal was shipped out (Testimony of Erin Robinson);

- Erdman would tell employees the time frame for delivery of customer metals (Testimony of Erin Robinson);

- Erdmann directed employees to use customer-stored metals to ship to other customers after those customers had been promised secure storage in NWTM's vaults;

- Despite customers being told their orders would be shipped in the order of payment clearance, Erdmann prioritized shipments based on which customers were most vocal or were threatening action (*e.g.*, Samantha Blizard);

- Despite promises of secure storage, Erdmann directed metal be taken from the NWTM vaults and used to fill other orders (Testimony of Greg Fullington);

- The Epicor system was in place to track inventory and obtain accurate information on product loss for decision making.  This process was so compromised due to Erdmann's adjusting inventory quantities that employees recommended denying her access to inventory assessment due to the concern of her inflation and misrepresentation of inventory.  When challenged, Erdmann was reinstated by Hansen. [Epicor required metal to be in the system before being counted] (Testimony of Alea Guerra and John Young);

- Erdmann created mass inflation in inventory creating a disparity in what the system recorded and what was actually in inventory thereby allowing her to short the system (Testimony of John Young);

These are but a few of the components of evidence presented to the jury regarding Erdmann's actions that supported her conviction and clearly show she played a significant role in the overall scheme.  The evidence presented at trial did not reflect a

1  combination of facts wholly disproportionate or disparate to Hansen's role in the fraud.

2  The two defendants were charged and properly joined for trial with joint activities in the

3  business operations of NWTM.

4      In denying defendant Erdmann's motion for severance, acquittal, and now for a

5  new trial, the Court properly identified and gave to the jury Ninth Circuit Jury

6  Instructions to address her concerns.  These included Ninth Circuit Model Instructions

7  No. 1.13 (separate consideration for each defendant), 2.11 (evidence for a limited

8  purpose), and 3.13 (separate consideration of multiple counts-multiple defendants).

9  These instructions were provided at the beginning and conclusion of the trial.

10     It is abundantly clear to this Court that the jury followed these instructions and did

11 consider the question of her guilt separately, as she was acquitted on Counts 9 and 15 and

12 Hansen was convicted of Count 15.  This fact alone demonstrates that the jury fulfilled

13 the notion that juries are presumed to follow instructions.  *See United States v. Mende,* 43

14 F.3d 1298, 1302 (9th Cir. 1995) and did indeed separately consider the facts as applied to

15 each defendant.

16     The Court has outlined a host of direct references detailing the extensive evidence

17 that Erdmann was clearly a joint participant in the operation of the fraudulent scheme.

18 The Court agrees with the assessment of the government that the trial evidence proved

19 not only that Erdmann controlled what metal shipped to NWTM customers and when, but

20 also that her direction of those shipments often contradicted the statements made to

21 NWTM customers, how inventory was manipulated, and the operations of the vault

22 controlled.

23     Erdmann cites no credible basis or evidence to support her motion.  Her claim of

24 limited customer contact ignores her role in the control and manipulation of filling orders

25 and inventory.

26     The essence of Erdmann's motion is that the bulk of the evidence in the trial was

27 attributed to Hansen.  While it is not disputed that a substantial amount of the evidence in

28 this case was attributed to the conduct of Hansen, Erdmann is not entitled to a severance

1  merely because the evidence against him was more damaging than the evidence against
2  her.  *United States v. Monks*, 744 F.2d 945, 948-49 (9th Cir. 1985).

3        Erdmann leapt to the conclusion pretrial, in her Rule 29 motion and now again for
4  a new trial, that the only remedies the Court should consider center around severance.
5  This argument is without merit.  The Court offered pretrial and followed that offer with
6  admonishment to the jury at the outset and conclusion of trial that the jury must consider
7  each defendant separately and that their verdict as to one defendant should not control
8  their verdict as to the other.  Erdmann has not demonstrated at any level that the
9  instructions provided by the Court were inadequate or that the jury was unable to
10  compartmentalize the evidence.

11        Last, Erdmann argues that the jury question during deliberation was proof that the
12  jury "was unable to find sufficient evidence to convict Erdmann based on her own
13  actions."  Dkt. 358.  This conclusion is likewise flawed.  As noted above, the jury heard
14  extensive evidence of Erdmann's specific activities in furtherance of the scheme.  These
15  witnesses testified to their first-hand knowledge of her activities.  These were individuals
16  who worked side-by-side with Erdmann and followed her directives; these were
17  witnesses who were in positions to directly observe how Erdmann contributed to the
18  criminal scheme.

19        Erdmann has presented nothing to support her claim of exceptional circumstances
20  or that a serious miscarriage of justice may have occurred.  The jury chose to reject her
21  claim of innocence and found her guilty.  That verdict should remain in place.

22        For all of the foregoing reasons, defendant Diane Erdmann's Motion for a New
23  Trial Pursuant to Fed. R. Crim. P. 33 is **DENIED**.

24        DATED this 3rd day of November, 2021.

25

26  _____

27  The Honorable Richard A. Jones
28  United States District Judge

ORDER ON DEFENDANT ERDMANN'S MOTION
FOR NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33 - 6