The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR18-092RAJ |
| Plaintiff, | |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| DIANE ERDMANN, | |
| Defendant. | |

Ross Hansen and Diane Erdmann took in millions of customer money and property and used it to prop up the Northwest Territorial Mint (NWTM) business and to enrich themselves.  But NWTM was built on lies.  NWTM continued operations because Ms. Erdmann stole customer-owned bullion storage to keep the business running.  These and other lies led to disaster, causing more than 3000 victims to lose $30 million of their savings, including $4.9 million in stored bullion that was stolen during the scheme.

While Mr. Hansen was the leader of this scheme, Diane Erdmann was an essential part of it as well.  Ms. Erdmann was loyal, not to the customers of NWTM, whom she regularly misled, but to Ross Hansen.  She followed his instructions to run NWTM as a Ponzi scheme, lying to get money and property in the door and then depriving the customers of what they were promised.  For her role in the scheme, the government recommends that Ms. Erdmann be sentenced to 90 months' imprisonment.

## I.   FACTUAL BACKGROUND[1]

### A. Erdmann had management responsibility – she was the NWTM vault manager and managed the bullion order fulfillment process

In the 1980s, Ross Hansen founded a coin store and later a silver-minting company called Northwest Territorial Mint. By the 2000s, Mr. Hansen operated NWTM from a manufacturing facility in Auburn. NWTM both produced and sold bullion and offered, for a fee, "secure" on-site storage for its bullion customers. Ms. Erdmann began working for NWTM around 2000 and became the vault manager in 2005. Erdmann PSR at ¶89. In this role, Ms. Erdmann supervised the vault and handled order fulfillment, determining what bullion products would be made and in what order the products would be shipped.

While Mr. Hansen oversaw all aspects of NWTM, the testimony at trial demonstrated that Ms. Erdmann was next in the chain of command. The employees who testified at trial explained that they viewed Ms. Erdmann as having management authority. One such former employee, Mike Orms, testified that around the time he started at NWTM, Ms. Erdmann told him that she could have him fired. Indeed, Ms. Erdmann's responsibilities, including her management of the vault and the bullion fulfillment process, supported trial testimony that she was the only person at the company, apart from Hansen, with the full picture of NWTM's business.

Ms. Erdmann ran the vault and the bullion fulfillment process to perpetuate the Defendants' scheme to defraud. Ms. Erdmann was aware of every bullion order that was placed. Ms. Erdmann typically did not even attempt to fulfill bullion orders by the date promised. Instead, Ms. Erdmann prioritized orders when the bullion customer threatened to complain. The evidence at trial showed that when other NWTM employees attempted to impose financial controls on the bullion order fulfillment process, Ms. Erdmann

---

[1] The Factual Background section of this memorandum is based on certain sections of the Presentence Report (PSR), Trial Exhibits, and counsel's recollection of the evidence at trial.

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ - 2*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    rejected these controls.  Mr. Hansen rejected the controls as well – he told one employee
2    that he wanted an internal system that he could "fudge."

3         **B.  Hansen and Erdmann steal from storage customers to hide their fraud**

4         Mr. Hansen and Ms. Erdmann caused NWTM to take in more and more money,
5    and accordingly more and more customer obligations, but Mr. Hansen used that money
6    for his own purposes.  Mr. Hansen expanded NWTM and paid for the Defendants' living
7    expenses.  Defendants covered up these fraudulent sales practices and diversion of funds
8    business by lying to bullion customers and by stealing from storage customers.

9         The NWTM storage program promised customers that customer-owned bullion
10   would be safely stored in NWTM's vaults.  Defendants labeled customer-owned bullion
11   with the name of particular storage customer.  *See, e.g.*, Trial Exhibit 400a (hearing
12   testimony of Ross Hansen).  The evidence at trial showed that, even in the 2000s,
13   Defendants stole from the vault to keep the bullion operation going.  Former NWTM
14   employee Diane Hopkins testified that, even in the Auburn vault in the early years of Ms.
15   Erdmann's vault management, Mr. Hansen and Ms. Erdmann were stealing storage
16   customers' supposedly safe and secure bullion to fulfill other orders.

17        During the 2009 to 2016 time frame, Defendants continued to steal the storage
18   customers' bullion.  Multiple former employees testified that, at the direction of Ms.
19   Erdmann and Mr. Hansen, and usually to fulfill other bullion orders, employees
20   repeatedly removed customer-owned bullion from the vaults.  The employees knew it
21   belonged to the storage customers because it was labeled.  This practice happened when
22   the vault was in Auburn and when the vault was in Nevada.  Besides employee
23   testimony, there was also email evidence that Ms. Erdmann directed the theft of stored
24   bullion.  *See* Trial Exhibits 115-117, 119, 121, 123-124, 129-130, 150-151, and 526.

25        While Ms. Erdmann tried to disguise this theft and called it "borrowing," the
26   stored metals were not replaced.  And to hide their theft, Ms. Erdmann and Mr. Hansen
27   did not allow employees to inventory customer storage.

28

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ* - 3

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Finally, NWTM's employees inventoried the vaults in April 2016 and learned that $4.9 million worth of customer-stored metal was missing. *See* Trial Exhibit 493.

### C. **Hansen and Erdmann are convicted of defrauding the bullion and storage customers of NWTM**

In April 2018, the Grand Jury returned an Indictment that charged Defendants with mail and wire fraud for their scheme to defraud NWTM customers of their money or their property. Dkt. #1. The Indictment charged Defendants with defrauding NWTM's bullion customers, NWTM's storage customers, and NWTM's lease customers. Dkt. #1.

The case went to trial in July 2021. On July 30, 2021, the jury returned a verdict finding Ms. Erdmann guilty on 13 of 15 counts. Dkt. #353. Ms. Erdmann was convicted of eight counts related to bullion customers and all five counts related to storage customers. She was acquitted on the lease count and one bullion customer count (S.F. bullion exchange).

## II.   **DEFENDANT'S GUIDELINE OBJECTIONS**

The government has no objections to the offense level as calculated by the PSR.[2] Ms. Erdmann objected to the PSR's guideline calculations as to the loss amount.

For purposes of the sentencing guidelines, a court need only make a reasonable estimation of the loss. *See United States v. Tadios*, 822 F.3d 501, 503 (9th Cir. 2018). Sentencing guideline enhancements must ordinarily be proved by the government by a preponderance of the evidence. *United States v. Garro*, 517 F.3d 1163, 1168-69 (9th Cir. 2008) (approving of preponderance standard for loss calculation because defendant was convicted of charged scheme). The guidelines instruct that relevant conduct is included in the loss calculation; when the loss amount is the result of jointly undertaken criminal activity, such as a scheme or conspiracy, the loss is based on the foreseeable acts and omissions of other within the scope of the jointly undertaken criminal activity. *See*

---

[2] The PSR used the 2018 Sentencing Guideline Manual but noted that the 2014 and 2015 Guideline Manuals would have reached the same result. PSR ¶52.

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ* - 4

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

USGG § 1B1.3(a)(1)(B); *United States v. Treadwell*, 538 F.3d 990, 1002 (9th Cir. 2010), *rev'd on other grounds by United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020).

The PSR calculated the loss amount as greater than $25 million.  PSR at ¶ 56, *citing* USSG § 2B1.1(b)(1)(L).  That is a reasonable estimate of the loss and is supported by the evidence at trial.   Defendants defrauded bullion customer and storage customers who were wrongfully deprived of their money or their property because of Defendants' lies.  Using conservative numbers from admitted trial exhibits, this evidence shows a loss of approximately $31.4 million, as shown in the below table:

| Trial Exhibit | Loss Amount |
| --- | --- |
| Exhibits 60, 542 – filtered NWTM records of unfulfilled bullion orders | Approx. $22 million |
| Exhibit 86 – outstanding refunds | Approx. $3 million |
| Exhibit 192 – S.F. receipt for bullion exchange | Approx. $1.5 million |
| Exhibit 493 – missing stored bullion | Approx. $4.9 million |
|  |  |
| TOTAL | Approx. $31.4 million |

A detailed list of victims and amounts for restitution is filed in separate exhibits and discussed below.  The Court may also rely on this restitution evidence when determining the loss amount.

Ms. Erdmann objected to the 22-level loss enhancement and argued that an 18-level enhancement is proper based on the amount of loss from the counts of conviction (a loss of greater than $3.5 million is an 18-level increase per USSG §2B1.1(b)(1)(J).  However, this loss calculation does not include the entire scheme for which Hansen and Erdmann were convicted.  *See Treadwell*, 593 F.3d at 1001.

//

//

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ* - 5

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## III.   SENTENCING RECOMMENDATION

The government recommends that Ms. Erdmann be sentenced to 90 months' imprisonment, half of the term that the government has recommended for Mr. Hansen. This remains a very significant sentence and is warranted by the massive harm caused by Defendants' crimes to more than 3000 victims.  Ms. Erdmann is responsible for these crimes – she managed all bullion orders and was intimately involved in the bullion storage fraud; the proposed sentence reflects that responsibility.  Lastly, a 90-month sentence is consistent with other similarly situated defendants.

### A. Defendants stole victims' savings.

Ross Hansen and Diane Erdmann defrauded more than 3000 victims out of their savings.  As seen in the victim testimony at trial, and in the victim impact statements, most of the victims invested in bullion because they believed it was safe investment. They wanted their money to be used to purchase their gold and silver bars.  They wanted to take possession of this gold and silver and have it increase in value over time.  But Defendants immediately spent the victims' money and inserted the victims into the NWTM Ponzi scheme.

Diane Erdmann knew very well the extent of the fraudulent scheme.  She was responsible for bullion fulfillment.  Ms. Erdmann knew how many orders needed to be filled and when they needed to be filled.  In this way, she knew that customers were lied to – about the availability of goods, about delivery dates, and about refunds.

The result of these crimes was over $30 million in losses to more than 3000 victims.  As described in the government's sentencing memorandum for Mr. Hansen, the victims are more than numbers, they were individuals who had their savings stolen, their lives upended, their trust and confidence shattered.  The amount of harm to the victims is staggering.  The crime calls for a significant punishment for Ms. Erdmann.

### B. Diane Erdmann played a significant role in the offense.

Ms. Erdmann should receive a significant sentence because of her role in this offense.  Ms. Erdmann was described as second in command by multiple NWTM

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ - 6*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    employees at trial.  And she was in charge of bullion fulfillment – the rotten core of the
2    NWTM business.

3          But Ms. Erdmann's leadership role was most obvious in the evidence related to the
4    storage customer fraud.  Ms. Erdmann regularly directed the use of customer-owned
5    bullion to fulfill other orders.  Multiple former employees testified about this practice,
6    and it was corroborated by email evidence.  Ms. Erdmann was stealing stored bullion in
7    this manner prior to 2009, when NWTM was in Auburn.  While Ross Hansen clearly
8    knew about this practice, it is also clear that Ms. Erdmann carried out the storage theft.
9    She was the one who made the call to the bullion lead, she was the one who sent the
10   email.  She led this theft.  And she lied to cover it up – she told other NWTM employees
11   that she was merely "borrowing" the precious metal (which even if it had been true—it
12   wasn't—would have been a betrayal of customers paying for secure storage).   As the
13   NWTM inventory showed, there was almost $5 million in stored bullion missing.

14         **C. Diane Erdmann lied to victims and the sentence must deter her from
15             further crimes and protect the public.**

16         Ms. Erdmann also lied to NWTM customers.  When a customer was upset about
17   their order, that customer was sometimes connected to Ms. Erdmann.  Ms. Erdmann's
18   title was Vault Manager and she presented as someone with knowledge and authority.

19         As emails and testimony showed, as Ms. Erdmann scrambled to keep the Ponzi
20   scheme going, she personally lied to bullion customers.  For example, Ms. Erdmann lied
21   to bullion customer D.J., who had wired $1.8 million to NWTM for the purchase of gold
22   buffalo coins.  Ms. Erdmann told D.J. that his order was going to be delayed because the
23   U.S. Mint was not making these coins.[3]  Other victims, including F.R., testified that they
24   spoke with Diane Erdmann about their order.  The Victim Impact Statements show that
25   this was not unusual – other customers had contact with Ms. Erdmann. Victim T.S. wrote

---

[3] Ms. Erdmann was convicted of the wire fraud count related to victim D.J. (Count 14).

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ* - 7

1  how he would periodically call Ms. Erdmann while he waited for shipment of metals.
2  VIS_199.  Victim W.F. reported how he would call once a week and talked to Diane
3  Erdmann.  VIS_378-379.  Other victims reported talking to Ms. Erdmann. *See* VIS_278-
4  279, 494, 595.

5      The sentence must protect the public from Ms. Erdmann – someone who is willing
6  to carry out a fraudulent scheme like this, apparently without any remorse.  As of the
7  filing of this sentencing memo, Diane Erdmann has not accepted any responsibility.

8      **D. Diane Erdmann must receive just punishment for her offense by receiving**
9          **a sentence that is consistent with similarly situated defendants.**

10     This case – 3000 victims, $30 million in loss, a defendant without remorse – needs
11  a lengthy sentence to provide just punishment for the offense. Further, a sentence of 7.5
12  years' imprisonment is appropriate because it is consistent with sentences imposed in
13  other similar cases.  The government is aware of several cases like this one – where
14  multiple defendants were sentenced for their role in defrauding bullion customers.

15     In *United States v. Esposito, et al.*, CR 19-208-CEM (M.D. Fla.), defendants
16  pleaded guilty to conspiring to defraud the customers of their bullion business by using
17  customer money that was intended to purchase and hold bullion to pay business expenses
18  and to fulfill prior orders.  The defendants, who were brothers, also provided their
19  customers with false account statements.  Defendants acknowledged that there were
20  approximately 120 victims in the case at the loss was over $5 million.  *See United States*
21  *v. Esposito, et al.*, CR 19-208, S. Esposito Plea Agreement, (Dkt. #3); J. Esposito Plea
22  Agreement (Dkt. #5).  Salvatore Esposito was sentenced to 87 months in prison and
23  Joseph Esposito, who "assisted" his brother with the fraud, was sentenced to 71 months'
24  imprisonment for the $9.3 million fraud.  *See https://www.justice.gov/usao-*
25  *mdfl/pr/operators-us-coin-bullion-sentenced-prison-more-93-million-fraud*; *see also* J.
26  Esposito Plea Agreement (Dkt. #5).

27     In *United States v. Larry Bates, et al.*, CR 17-6263-SHL (W.D. Tenn.) the
28  defendants were convicted at trial of running a bullion business that diverted customer

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ* - 8

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   money to fund business expenses, personal expenses, and to fulfill prior orders.  *United*
2   *States v. Bates*, 784 Fed.Appx. 312, 322-23 (6th Cir. 2019).  The court sentenced Larry
3   Bates, the leader of the scheme, to 262 months' imprisonment.  *Id.* at 333.  Larry Bates's
4   sons, including one who was the "second in command" were also convicted and both
5   received 151-month sentences.  *Id.* at 318, 325.  Another defendant, Larry Bates's
6   executive assistant, who handled "particularly angry customers who were threatening
7   legal action" was sentenced to 63 months' imprisonment.  *Id.* at 325, 327-28.[4]

8       **E.  The Probation Office Recommendation does not adequately address the
9           seriousness of the offense and Ms. Erdmann's role.**

10      The Probation Office recommended a three-year sentence for Ms. Erdmann and
11  the government respectfully disagrees with this recommendation and how the Probation
12  recommendation applied multiple Section 3553(a) factors.  For example, the Probation
13  recommendation does not compare Ms. Erdmann to similarly situated defendants.

14      The Probation recommendation does not fully acknowledge Ms. Erdmann's role in
15  this offense and this case.  The recommendation treats Ms. Erdmann as a bit player in the
16  scheme to defraud but she was a leader.  Ms. Erdmann was a manager at NWTM who
17  had authority over everyone else, except Mr. Hansen.  She shared equally in the proceeds
18  of the scheme.  Similarly, Probation recommends a lower sentence for Ms. Erdmann
19  because she has "gone through this process" but again fails to acknowledge that Ms.
20  Erdmann put herself here and never accepted responsibility despite strong evidence of her
21  guilt, especially as it relates to her theft of bullion customer storage.

22      Further, the government respectfully disagrees with the Probation Office reducing
23  its recommendation because of concerns about Ms. Erdmann's health.  These concerns
24  are not supported by the record.  The PSR contains citations to an evaluation however
25  that evaluation is not included in the record.  The Probation recommendation concludes

26
27  ────────────────
28  [4] The government cited other bullion-fraud sentences in its sentencing memorandum for Ross Hansen.

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ* - 9

that three years is sufficient because Ms. Erdmann is "in poor health and chronic pain."

However, as the Court is aware, Ms. Erdmann underwent two hip replacement surgeries

in 2022.  In any event, there is no indication that Bureau of Prisons could not handle any

of Ms. Erdmann's health conditions.  It is not grounds for a lower sentence.

## IV.    RESTITUTION

Ms. Erdmann should be ordered to pay restitution in the amount of

$32,163,327.52, to the victims listed in Exhibit 602, jointly and severally liable for this

amount with Mr. Hansen.  Sealed Sentencing Exhibit 602.  Exhibit 602 is the same as

Exhibit 601 – except that Exhibit 602 does not seek restitution for the S.F. bullion

exchange, because Ms. Erdmann was acquitted of this count.

Other than S.F., Exhibit 602 lists all the various victims of Defendants' scheme –

bullion customers, customers who requested refunds, storage customers, and others.  The

government will request that the Judgment adopt this $32.1 million number and reference

Exhibit 602 in the judgment.

The basis for Exhibit 602 is summarized in Exhibit 603.  Exhibit 603 reflects the

FBI's comprehensive review of the evidence supporting restitution in this case.  As

explained in Exhibit 603, the FBI reviewed several sources:

| Source | Description |
| --- | --- |
| Trial Exhibit 60 (admitted at trial) | Spreadsheet from NWTM Epicor system of delayed orders |
| Trial Exhibit 62 (marked but not admitted) | Spreadsheet from NWTM Epicor system of unfulfilled orders |
| Bankruptcy claims | Signed claims submitted by victims as part of 16-11767 bankruptcy case |
| Trial Exhibit 86 (admitted) | Bullion customer refund tracker |
| Trial Exhibit 493 (admitted) | Storage loss spreadsheet |

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ* - 10

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Trial Exhibit 57 (admitted) | R.V. unpaid bullion purchase |
|---|---|

The government is prepared to present testimony from the FBI case agent at sentencing, if necessary, to support its request for a restitution order.  The information in the spreadsheets marked as Exhibit 601, 602, and 603, along with other backup spreadsheets, were produced to the Probation Office and to defense counsel in September 2021.  (Some addresses in Exhibit 601/602 have been updated.)

## V.    CONCLUSION

The government respectfully recommends that the Court sentence Diane Erdmann to 90 months' imprisonment followed by three years of supervised release.  The government also requests that Ms. Erdmann be ordered to pay $32,163,327.52 in restitution.

Dated this 22nd day of April 2022.

Respectfully submitted,

NICHOAS W. BROWN
United States Attorney

*s/ Brian Werner*
BRIAN WERNER
BENJAMIN DIGGS
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: (206) 553-7970

Government's Sentencing Memorandum - Erdmann
*United States v. Hansen & Erdmann, CR18-092RAJ* - 11

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970